IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSE DAVID CHICA-HERNANDEZ,<br><br>*Plaintiff,*<br><br>-v-<br><br>ITALPRESSE U.S.A., INC. and ITALPRESSE S.P.A.,<br><br>*Defendants.* | Civil Action No.:<br><br>2:17-CV-06422 (KAM)(VMS) |

**Park Declaration in Support of ISPA's Rule 56.1 Statement of Facts**

Sun Ah (Michelle) Park**,** an attorney duly licensed to practice in the Courts of the State of New York and a member of the bar of the Court, declares under penalty of perjury as follows:

1. I am associated with the law firm of WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, attorneys for defendant ITALPRESSE S.P.A. ("ISPA") and I am fully familiar with all the facts and circumstances pertaining to the within litigation following the review and analysis of the legal file maintained by this law firm for the defense of this action.

2. Pursuant to Rule 56.1 of the Local Rules of the United States Courts for the Southern and Eastern Districts of New York ("Statement of Facts") as well as the Hon. Kiyo A. Matsumoto's Individual Practices in Civil Cases, Nos. III (B) and III (C), I submit the declaration in support of the accompanying ISPA's Statement of Facts.

**PROCEDURAL HISTORY**

3. Plaintiff Jose David Chica Hernandez initiated the above entitled action by filing a Verified Complaint under Case No. 2:17-cv-06422(KAM)(VMS) on November 3, 2017, naming Italpresse U.S.A., Inc. ("IUSA") and Italpresse Industrie S.P.A. as defendants. (**Exhibit "9"**).

4. Plaintiff filed an Amended Verified Complaint on March 15, 2018, naming IUSA and ISPA as defendants. (**Exhibit "10"**).

5. Defendants ISPA filed its Answer to the Plaintiff's Amended Verified Complaint on July 25, 2018. (**Exhibit "11"**).

6. An Initial Conference was held on or about March 27, 2018, and Status Conferences were held on January 7, 2019, April 30, 2019, July 8, 2019, February 4, 2020, September 30, 2020, and December 3, 2020. A Pre-Motion Conference was held on April 13, 20201.

7. Defendant Italpresse U.S.A. served its First Set of Interrogatories on the Plaintiff, and the Plaintiff served his response on or about January 9, 2019. (**Exhibit "12"**).

8. Defendant ISPA served its First Set of Interrogatories on the Plaintiff, but the Plaintiff never served his response.

9. Parties also conducted multiple depositions of Plaintiff, employees of IUSA and ISPA, employees of Island Architectural Woodworking Inc., and three expert witnesses. Excerpts of these witnesses' testimony which are relative to the instant motion, are attached as exhibits in the Joint Deposition Appendix which has been submitted in support of the instant motion.

10. On March 3, 2021, this Court issued an Order certifying that that discovery proceedings known to be necessary have been completed and that there has been a reasonable opportunity to complete such proceedings. (**Exhibit "13"**). As of this date, a final pre-trial conference has not been held and a trial date has not been assigned to this matter.

**SUMMARY OF FACTS & LEGAL ARGUMENTS**

11. The undersigned respectfully directs this Court to the accompanying Memorandum of Law, as noted above, as well as to the Rule 56.1 Statement of Undisputed Material Facts, which fully set forth ISPA's arguments along with the facts relevant to this motion. A summarized version of the arguments and facts are contained in this Declaration.

12. Plaintiff Jose David Chica-Hernandez alleges that he was injured during the course of his employment at non-party Island Architectural Woodworking Inc. (hereinafter "IAWW"). Plaintiff's finger on his left hand came into contact with an unidentified nip point of the glue spreader component (the "Glue Spreader") part of a 2011 Italpresse Mark/C 16-32/10 Automatic Pressing Line (the "Pressing Line"), manufactured by Defendant ISPA, and sold to IAWW by co-defendant Italpresse U.S.A. Plaintiff asserts negligence, strict products liability, and express and implied warranty theories of liability against ISPA.

13. In considering the merits of ISPA's motion for summary judgment, the Court should completely disregard the opinions of the Plaintiff's engineer, Irving Ojalvo, since they lack any demonstrable evidentiary foundation and do not meet the standard for admissibility under Fed. R. Evid. 702. Dr. Ojalvo's conclusion that the Glue Spreader was defectively designed and unreasonably dangerous because its interlock switches were "too easy" to defeat is based on pure speculation. Dr. Ojalvo admitted at his deposition that he does not actually know how the interlock switches were bypassed. Without knowing the specifics as to how the interlocks were bypassed in the first place, Dr. Ojalvo cannot possibly have formed any valid opinion about the relative difficulty of bypassing the interlock switches.

14. The Plaintiff's alleges that some tape that was placed on the Gluer Spreader's interlock switches was effective at bypassing the switches, but this allegation is also without support in the record. In reality, one of the interlock switches was completely removed, another

3

interlock switch was bypassed with a jumper wire in the main circuit box of the pressing line, which effectively eliminated any electric current to the interlock switch, and two other interlock switches had tape placed over the activation cams to keep them engaged.

15. Dr. Ojalvo's purported alternative design is equally meritless. After first writing in his report that a Schmersal brand interlock switch was a feasible, safer alternative, Dr. Ojalvo then admitted at his deposition that he was not sure which type of interlock switch would have been safer and a feasible alternative design, due to the fact Dr. Ojalvo did not conduct any research into which interlock switches were actually available for this type of Glue Spreader machine. In addition, Dr. Ojalvo could not say at deposition which specific features an alternative interlock switch should have for this type of machine; Dr. Ojalvo did not identify other, similar machines that use a different type of interlock switch; Dr. Ojalvo offered no engineering drawings of a proposed alternative interlock switch; and Dr. Ojalvo did not conduct any testing of a proposed alternative interlock switch. In short, Dr. Ojalvo has not developed a feasible alternative design, and only offers conclusory statements that do not meet the criteria for a design defect claim under New York law.

16. Dr. Ojalvo's opinions regarding the effectiveness of the warnings on the Glue Spreader are equally hollow. The English language warnings and pictographs that already appeared on the machine and in its manual conveyed the same information that Dr. Ojalvo claims should have been conveyed in his report. Dr. Ojalvo claims, without any rationale, that these warnings should have also been written in Spanish. He does not point to any industry standard, independent study, or any other evidence or research that calls for the warnings on the Glue Spreader to be written in multiple languages. Regardless, a simple, easy to understand pictograph

on the machine displayed the information that Dr. Ojalvo claimed should have been conveyed in a Spanish-language warning, that the Plaintiff admitted, he did not read prior to his accident

17. Once Dr. Ojalvo's misleading and unreliable opinions are removed from consideration, the undisputed facts confirm that the Plaintiff does not have a valid strict liability cause of action predicated upon a manufacturing defect, design defect, or failure to warn theory of liability. First, there has been no evidence of a manufacturing defect that purportedly caused the Plaintiff's injuries. Even Plaintiff's expert, Dr. Ojalvo, conceded that the subject Glue Spreader did not have a manufacturing defect, as he did not even mention one in his reports or in his deposition. The Glue Spreader was equipped with multiple safety measures to stop the operation of its rollers, in addition to the interlock switches, and it had an automatic cleaning function, to prevent operators from placing their hands into the machine, that was undoubtedly working on the date of the accident, but the Plaintiff did not use.

18. Furthermore, the Plaintiff was fully aware of the risk of injury when placing his hand inside of the Glue Spreader in the area of its moving rollers, which was open and obvious. The Plaintiff testified that he did not read the warnings that were present on the Glue Spreader, or in its manual, which warned against a person placing his hands inside the Glue Spreader, and therefore cannot argue that ISPA's alleged failure to warn was the proximate cause of his injuries.

19. Any injuries not attributable to Plaintiff's failure to avoid an open and obvious hazard are directly attributable to the failure of his employer, IAWW, to properly train and supervise the Plaintiff, as well as its violation of the Occupational Safety and Health Administration regulation requiring lockout and tagout of the machine before any person coming into contact with its the moving parts. Furthermore, IAWW's intentional removal of the interlock switch, its bypassing of two other interlock switches located inside the machine's frame by placing

tape over the activation cams, and its installation of a jumper wire inside a separate electrical cabinet to bypass another interlock switch are egregious actions that were not recognized or considered by Dr. Ojalvo before forming his opinion that a design defect and a failure to warn on the part of ISPA were the cause of the Plaintiff's injuries. .

20. Additionally, the Plaintiff's breach of warranty claims are time-barred by the statute of limitations under New York law. The Plaintiff failed to initiate the action within four years of the date of the delivery of the Glue Spreader, which was sold to IAWW in May of 2011. The Plaintiff commenced this action by filing the summons and complaint on November 3, 2017, more than six years after the Glue Spreader was delivered to the Plaintiff's employer, IAWW.

21. During the pre-motion application process, the Plaintiff submitted a voluminous Statement of Additional Facts in an effort to cloud the issues and create the impression that any of the material facts are disputed. Plaintiff specifically attempts to generate disputes over whether certain American National Standards Institute ("ANSI") Standards apply to the case, how the Glue Spreader interlocks were bypassed, and if the Plaintiff was holding a rag in his hand or not. These issues are irrelevant to the arguments made in support of this motion, and do not in any way negate Plaintiff's failure to successfully prove the essential elements of his case. Regardless of whether the ANSI standards are applied, how the interlocks were bypassed, and whether the Plaintiff was holding something in his hand, the Plaintiff's expert's lack of a re-creatable and reliable methodology to support his opinions, and his failure to consider all of the factual data and information in the record render his opinions inadmissible. Nor do these issues change the fact that the hazard presented by the moving rollers on the Glue Spreader was open and obvious to Plaintiff, obviating the need for any warning. Plaintiff, relying on Dr. Ojalvo's inadmissible opinions, completely fails to meet his burden of establishing a feasible alternative design, suitable

6

254571134v.1
254571134v.1

alternative warnings, or a manufacturing defect. For these reasons, summary judgment should be granted to ISPA on Plaintiff's manufacturing and design defect, failure to warn, and breach of warranty causes of action.

## EXHIBITS & SUPPORTING DOCUMENTATION

22. In addition to those items listed above, ISPA submits its Rule 56.1 Statement of Undisputed Material Facts in support of the instant motion, which was previously filed but has since been updated to include exhibit references consistent with this Declaration; Response to Plaintiff's Additional .

23. Pursuant to the Chambers Practices of Hon. Kiyo A. Matsumoto, ISPA also submits, jointly with co-defendant Italpresse U.S.A. and the Plaintiff, a Joint Deposition Transcript Appendix.

24. Attached hereto as **Exhibit "1"**[1] a true and correct copy of the pages of ISPA's Corporate Representative Alberto Sala's Deposition Transcript and Exhibits referred to in ISPA's Rule 56.1 Statement of Undisputed Material Facts.

25. Attached hereto as **Exhibit "2"** a true and correct copy of the pages of Island Architectural Woodworks' (hereinafter "IAWW") Assistant Foreman Bharat Mojum's Deposition Transcript and Exhibits referred to in ISPA's Rule 56.1 Statement of Undisputed Material Facts.

26. Attached hereto as **Exhibit "3"** a true and correct copy of the pages of the pages of Plaintiff's engineer on liability Irving Ojalvo's Deposition Transcript and Exhibits referred to in ISPA's Rule 56.1 Statement of Undisputed Material Facts.

---

[1] Exhibits "1" through "8" of this declaration correspond to Exhibits "1" through "11" of the Joint Deposition Transcript Appendix.

27. Attached hereto as **Exhibit "4"** a true and correct copy of the pages of the pages of Italpresse U.S.A., Inc.'s Chief Operating Officer David Ortmayer's Deposition Transcript and Exhibits referred to in ISPA's Rule 56.1 Statement of Undisputed Material Facts.

28. Attached hereto as **Exhibit "5"** a true and correct copy of the pages of the pages of safety officer at non-party Island Architectural Woodworks (hereinafter "IAWW") Michael Lurz's Deposition Transcript and Exhibits referred to in ISPA's Rule 56.1 Statement of Undisputed Material Facts.

29. Attached hereto as **Exhibit "6"** a true and correct copy of the pages of the pages of IAWW's Machine Operator German Monterosa's Deposition Transcript and Exhibits referred to in ISPA's Rule 56.1 Statement of Undisputed Material Facts.

30. Attached hereto as **Exhibit "7"** a true and correct copy of the pages of the pages of Plaintiff's Deposition Transcript and Exhibits referred to in ISPA's Rule 56.1 Statement of Undisputed Material Facts.

31. Attached hereto as **Exhibit "8"** a true and correct copy of the pages of the pages of Jose Alexander Chica-Hernandez's Deposition Transcript and Exhibits referred to in ISPA's Rule 56.1 Statement of Undisputed Material Facts.

32. Attached hereto as **Exhibit "9"** is a true and correct copy of the Plaintiff's Verified Complaint, filed under Case No. 2:17-cv-06422(KAM)(VMS) on November 3, 2017, naming Italpresse U.S.A., Inc. ("Italpresse U.S.A.") and Italpresse Industrie S.P.A. as defendants.

33. Attahced hereto as **Exhibit "10"** is a true and correct copy of the Amended Complaint.

34. Attached hereto as **Exhibit "11"** is Defendant ISPA's Answer to the Plaintiff's Amended Verified Complaint, filed on July 25, 2018.

35. Attached hereto as **Exhibit "12"** is a true and correct copy of the pages of the responses of the Plaintiff to the Italpresse U.S.A.'s Interrogatories referred in the Statement of Facts.

36. Attached hereto as **Exhibit "13"** is a true and correct copy of Order dated March 3, 2021 by Magistrate Judge Vera M. Scanlon stating that the discovery is certified as complete.

## CONCLUSION

**WHEREFORE**, for the reasons set forth above and in the accompanying Memorandum of Law, ISPA respectfully requests that this Honorable Court grant ISPA's motion for summary judgment pursuant to Fed. R. Civ. P. 56, thereby dismissing Plaintiff's complaint against ISPA in its entirety, and for such other and further relief as this Court deems just and proper.

Dated: May 24, 2021
White Plains, New York

_____
Sun Ah (Michelle) Park