# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSE DAVID CHICA-HERNANDEZ, | Civil Action No.: |
| *Plaintiff,* | |
| -v- | 2:17-CV-06422 (KAM)(VMS) |
| ITALPRESSE U.S.A., INC. and ITALPRESSE S.P.A., | |
| *Defendants.* | |

## ITALPRESSE S.P.A.'S
## MEMORANDUM OF LAW
## FOR MOTION FOR SUMMARY JUDGMENT

Thomas M. DeMicco
Sun Ah (Michelle) Park
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER, LLP
1133 Westchester Avenue
White Plains, New York 10604
Telephone:  (914) 323-7000
Facsimile:  (914) 323-7001

*Attorneys for Defendant*
*Italpresse S.P.A.*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ................................................................................. 1

LEGAL ARGUMENT .................................................................................................. 5

   I.   STANDARD FOR SUMMARY JUDGMENT ................................................ 5

SUMMARY OF MATERIAL FACTS ........................................................................ 6

   II.   THE OPINIONS OF THE PLAINTIFF'S ENGINEER ARE UNRELIABLE, BASELESS, AND THEREFORE INADMISSABLE AND NOT ENTITLED TO CONSIDERATION. ...................................................................................... 10

   III.   ISPA IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF CANNOT PROVE A *PRIMA FACIE* CASE OF STRICT PRODUCT LIABILITY. ..... 18

      A.   The Plaintiff Has Not Met His Burden of Demonstrating a Feasible Alternative Design, Which Eviscerates His Design Defect Cause of Action. ..................................... 19

      B.   Plaintiff's Failure to Warn Cause of Action Fails Because He Was Aware of the Open and Obvious Risk of Injury and Plaintiff Has Produced No Evidence that the Proposed Alternative Warning Would Have Prevented the Plaintiff's Accident. ......... 23

      C.   Plaintiff Has Conceded that the Glue Spreader Was Not Defectively Manufactured. ......................................................................................................... 27

   IV.   PLAINTIFF'S CLAIMS FOR BREACH OF WARRANTY ARE TIME-BARRED. .............................................................................................................. 28

CONCLUSION ......................................................................................................... 29

254572372v.1
254572372v.1

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Hedstrom Corp.*, 76 F. Supp. 2d 422 (S.D.N.Y. 1999)………………………………20

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505 (1986)…………………………6

*Baptise v. Northfield Foundry & Machine Company,* 184 A.D.2d 841, 584 N.Y.S.2d 221 (3d Dept. 1992)……………………………………………………………………………………………25

*Barnes v. Pine Tree Machinery*, 261 A.D.2d 295 691 N.Y.S.2d 398 (1st Dept. 1999)…………25

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 141 F. Supp. 2d 320 (E.D.N.Y. 2001)…………………………………………………………………………………………..17

*Borgognone v. Trump Plaza*, No. 98-CV-6139 (ILG), 2000 U.S. Dist. LEXIS 4081 (E.D.N.Y. Mar. 9, 2000)…………………………………………………………………………………………10

*Bourelle v. Crown Equip. Corp.*, 220 F.3d 532 (7th Cir. 2000)……………………………..25, 26

*Brooks v. Outboard Marine Corp.*, 234 F.3d 89 (2d Cir. 2000)…………………………………13

*Brown v. Metro. Transit Auth.*, 281 A.D.2d 159, 721 N.Y.S.2d 56 (1st Dept. 2001)…………..23

*Caprara v. Chrysler Corp.*, 52 N.Y.2d 114, 129, 436 N.Y.S.2d 251 (1981)……………………27

*Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986)…………………………..5

*Clark v. Takata*, 192 F.3d 750 (7th Cir. 1999)…………………………………………………..11

*Codling v. Paglia*, 32 N.Y.2d 330 (1973)………………………………………………………..19

*Colon v. BIC USA, Inc.*, 199 F. Supp. 2d 53 (S.D.N.Y. 2001)…………………………………..11

*Community of Roguefort v. William Faehndrich, Inc.*, 303 F.2d 494 (2d Cir. 1962)……………11

*Cover v. Cohen*, 61 N.Y.2d 261, 473 N.Y.S.2d 378 (1984)……………………………………..19

*Cummins v. Lyle Indus.*, 93 F.3d 362 (7th Cir.1996)……………………………………………11

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597, 113 S.Ct. 2786 (1993)……………...11

*Davidov v. Louisville Ladder Grp., LLC*, 2005 U.S. Dist. LEXIS 3117 (S.D.N.Y. Mar. 1, 2005) ………………………………………………………………………………………………17

*Galssberg v. Staples the Office Superstore E., Inc.* No. 08-cv-2132, 2010 U.S. Dist. LEXIS 103096 (E.D.N.Y. Sept. 13, 2010)……………………………………………………………23

254572372v.1
254572372v.1

*General Elec. Co. v. Joiner,* 522 U.S. 136, 118 S. Ct. 5132 (1997)………………………………..10

*Heller v. U.S. Suzuki Motor Corp.*, 64 N.Y.2d 407, 410, 488 N.Y.S.2d 132, 133 (1985)……….28

*Holtz v. Rockefeller Co*., 258 F.3d 62 (2d. Cir. 2001)…………………………………………………5

*Jaramillo v. Weyerhaeuser Co*., 536, F.3d 140 (2d Cir 2008)…………………………………………6

*Jarvis v. Ford Motor Co.*, No. 92 Civ. 2900, 1999 WL 461813 (S.D.N.Y. July 6, 1999)………13

*Kern v. Frye Copy Systems, Inc.*, 878 F. Supp. 660 (S.D.N.Y. 1995)…………………………...28

*Liz v. William Zinsser & Co.*, 253 A.D.2d 413, 676 N.Y.S.2d 619 (2nd Dept. 1998)…………..22

*Lumpkin v. Morris*, CV 95 0547508, 1996 Conn. Super. LEXIS 3350, at *3 (Super. Ct. Dec. 20, 1996) ………………………………………………………………………………………………17

*Maria v. Church of Our Lady of Mount Carmel*, 36 A.D.3d 766 (2d Dep't. 2007)……………23

*Martinez v. Greenwich St. Prods., Inc.*, 2010 NY Slip Op 33477(U), ¶ 8 (Sup. Ct.)…………..17

*Matteo v. Kohl's Dep't Stores, Inc.,* no. 09-civ-7830, 2012 U.S. Dist. LEXIS 32193(S.D.N.Y. March 5, 2021)………………………………………………………………………………......24

*McCarthy v. Olin Corp.*, 119 F.3d 148 (2d Cir. 1997)…………………………………………...18

*Nora Beverages v. Perrier Group of America*, 164 F.3d 736 (2d Cir. 1998)……………………10

*Perazone v. Sears, Roebuck & Co.*, 128 A.D.2d 15, 515 N.Y.S.2d 908 (3d Dep't. 1987)………27

*Pirie v Krasinski*, 18 A.D.3d 848 (2005)…………………………………………………………23

*Ramirez v. Sears, Roebuck & Co*., 286 A.D.2d 428, 729 N.Y.S.2d 503 (2d Dept. 2001)……….19

*Raskin v. Wyatt Company*, 125 F.3d 55 (2d Cir. 1997)…………………………………………10

*Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316 (7th Cir.1996)………………………………………...12

*Ruthosky v. John Deere Co.*, 235 A.D.2d 620, 651 N.Y.S.2d 717 (3d Dept. 1997)…………….19

*Rypkema v. Time Manufacturing Company*, 263 F.Supp2d 687 (S.D.N.Y. 2003)………13, 20, 21

*Sabater v. Lead Indus. Assoc., Inc.*, 183 Misc.2d 759, 704 N.Y.S.2d 800 (N.Y. Sup. Ct. Bronx Co. 2000)……………………………………………………………………………………………19

*Saltz v. Wal-Mart Stores, Inc*., 10-civ-4687, 2012 U.S. Dist. LEXIS 33448 (S.D.N.Y. Mar. 7, 2012)………………………………………………………………………………………………23

*Searle v. Suburban Propane Div. Of Quantum Chem. Corp.*, 263 A.D.2d 335, 700 N.Y.S.2d 588 (3d Dept. 2000)……………………………………………………………………………………..19

*Sorto-Romero v. Delta Int'l Mach. Corp.*, No. 05-CV-5172 (SJF) (AKT), 2007 U.S. Dist. LEXIS 71588 (E.D.N.Y. Sep. 24, 2007)………………………………………………………16, 17, 22

*Stephen v. Sico Inc.,* 237 A.D.2d 709, 711, 654 N.Y.S.2d 449, 451 (3d Dep't. 1997)…………23

*Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51 (2d Cir. 1993)……………………………………..10

*Toole v. Toshin Co., Ltd.*, No. 00-CV-881 S, 2004 WL 2202580 (W.D.N.Y. 2004)……………22

*Voss v. Black & Decker Mfgr. Co.*, 59 N.Y.2d 102, 463 N.Y.S.2d 398 (1983)…………………19

*Watkins v. Telsmith, Inc.*, 121 F.3d 984 (5th Cir. 1997)…………………………………………11

**Rules, Standards & Statutes**

Fed. R. Civ. P. 56……………………………………………………………………………...5, 6, 10

Fed. R. Evid. 702………………………………………………………………………….1, 11, 18

McKinney's Uniform Commercial Code §§ 2-318, 2-725……………………………………….28

254572372v.1
254572372v.1

## PRELIMINARY STATEMENT

Defendant Italpresse S.P.A. ("ISPA") respectfully submits this Memorandum of Law in support of a motion seeking an Order pursuant to Fed. R. Civ. P. 56, granting it summary judgment and dismissing this matter in its entirety.

Plaintiff Jose David Chica-Hernandez alleges that he was injured during the course of his employment at non-party Island Architectural Woodworking Inc. (hereinafter "IAWW"). Plaintiff's finger on his left hand came into contact with an unidentified nip point of the glue spreader component (the "Glue Spreader") part of a 2011 Italpresse Mark/C 16-32/10 Automatic Pressing Line (the "Pressing Line"), manufactured by Defendant ISPA, and sold to IAWW by co-defendant Italpresse U.S.A. Plaintiff asserts negligence, strict products liability, and express and implied warranty theories of liability against ISPA.

In considering the merits of ISPA's motion for summary judgment, the Court should completely disregard the opinions of the Plaintiff's engineer, Irving Ojalvo, since they lack any demonstrable evidentiary foundation and do not meet the standard for admissibility under Fed. R. Evid. 702. Dr. Ojalvo's conclusion that the Glue Spreader was defectively designed and unreasonably dangerous because its interlock switches were "too easy" to defeat is based on pure speculation. Dr. Ojalvo admitted at his deposition that he does not actually know how the interlock switches were bypassed. Without knowing the specifics as to how the interlocks were bypassed in the first place, Dr. Ojalvo cannot possibly have formed any valid opinion about the relative difficulty of bypassing the interlock switches. The Plaintiff's alleges that some tape that was placed on the Gluer Spreader's interlock switches was effective at bypassing the switches, but this allegation is also without support in the record. In reality, one of the interlock switches was completely removed, another interlock switch was bypassed with a jumper wire in the main circuit

1

box of the pressing line, which effectively eliminated any electric current to the interlock switch, and two other interlock switches had tape placed over the activation cams to keep them engaged.

Dr. Ojalvo's purported alternative design is equally meritless. After first writing in his report that a Schmersal brand interlock switch was a feasible, safer alternative, Dr. Ojalvo then admitted at his deposition that he was not sure which type of interlock switch would have been safer and a feasible alternative design, due to the fact Dr. Ojalvo did not conduct any research into which interlock switches were actually available for this type of Glue Spreader machine. In addition, Dr. Ojalvo could not say at deposition which specific features an alternative interlock switch should have for this type of machine; Dr. Ojalvo did not identify other, similar machines that use a different type of interlock switch; Dr. Ojalvo offered no engineering drawings of a proposed alternative interlock switch; and Dr. Ojalvo did not conduct any testing of a proposed alternative interlock switch. In short, Dr. Ojalvo has not developed a feasible alternative design, and only offers conclusory statements that do not meet the criteria for a design defect claim under New York law.

Dr. Ojalvo's opinions regarding the effectiveness of the warnings on the Glue Spreader are equally hollow. The English language warnings and pictographs that already appeared on the machine and in its manual conveyed the same information that Dr. Ojalvo claims should have been conveyed in his report. Dr. Ojalvo claims, without any rationale, that these warnings should have also been written in Spanish. He does not point to any industry standard, independent study, or any other evidence or research that calls for the warnings on the Glue Spreader to be written in multiple languages. Regardless, a simple, easy to understand pictograph on the machine displayed the information that Dr. Ojalvo claimed should have been conveyed in a Spanish-language warning, that the Plaintiff admitted, he did not read prior to his accident

2

Once Dr. Ojalvo's misleading and unreliable opinions are removed from consideration, the undisputed facts confirm that the Plaintiff does not have a valid strict liability cause of action predicated upon a manufacturing defect, design defect, or failure to warn theory of liability. First, there has been no evidence of a manufacturing defect that purportedly caused the Plaintiff's injuries. Even Plaintiff's expert, Dr. Ojalvo, conceded that the subject Glue Spreader did not have a manufacturing defect, as he did not even mention one in his reports or in his deposition. The Glue Spreader was equipped with multiple safety measures to stop the operation of its rollers, in addition to the interlock switches, and it had an automatic cleaning function, to prevent operators from placing their hands into the machine, that was undoubtedly working on the date of the accident, but the Plaintiff did not use.

Furthermore, the Plaintiff was fully aware of the risk of injury when placing his hand inside of the Glue Spreader in the area of its moving rollers, which was open and obvious. The Plaintiff testified that he did not read the warnings that were present on the Glue Spreader, or in its manual, which warned against a person placing his hands inside the Glue Spreader, and therefore cannot argue that ISPA's alleged failure to warn was the proximate cause of his injuries.

Any injuries not attributable to Plaintiff's failure to avoid an open and obvious hazard are directly attributable to the failure of his employer, IAWW, to properly train and supervise the Plaintiff, as well as its violation of the Occupational Safety and Health Administration regulation requiring lockout and tagout of the machine before any person coming into contact with its the moving parts. Furthermore, IAWW's intentional removal of the interlock switch, its bypassing of two other interlock switches located inside the machine's frame by placing tape over the activation cams, and its installation of a jumper wire inside a separate electrical cabinet to bypass another interlock switch are egregious actions that were not recognized or considered by Dr.

Ojalvo before forming his opinion that a design defect and a failure to warn on the part of ISPA were the cause of the Plaintiff's injuries. .

Additionally, the Plaintiff's breach of warranty claims are time-barred by the statute of limitations under New York law. The Plaintiff failed to initiate the action within four years of the date of the delivery of the Glue Spreader, which was sold to IAWW in May of 2011. The Plaintiff commenced this action by filing the summons and complaint on November 3, 2017, more than six years after the Glue Spreader was delivered to the Plaintiff's employer, IAWW.

During the pre-motion application process, the Plaintiff submitted a voluminous Statement of Additional Facts in an effort to cloud the issues and create the impression that any of the *material* facts are disputed. Plaintiff specifically attempts to generate disputes over whether certain American National Standards Institute ("ANSI") Standards apply to the case, how the Glue Spreader interlocks were bypassed, and if the Plaintiff was holding a rag in his hand or not. These issues are irrelevant to the arguments made in support of this motion, and do not in any way negate Plaintiff's failure to successfully prove the essential elements of his case. Regardless of whether the ANSI standards are applied, how the interlocks were bypassed, and whether the Plaintiff was holding something in his hand, the Plaintiff's expert's lack of a re-creatable and reliable methodology to support his opinions, and his failure to consider all of the factual data and information in the record render his opinions inadmissible. Nor do these issues change the fact that the hazard presented by the moving rollers on the Glue Spreader was open and obvious to Plaintiff, obviating the need for any warning. Plaintiff, relying on Dr. Ojalvo's inadmissible opinions, completely fails to meet his burden of establishing a feasible alternative design, suitable alternative warnings, or a manufacturing defect. For these reasons, summary judgment should be

4

granted to ISPA on Plaintiff's manufacturing and design defect, failure to warn, and breach of warranty causes of action.

## LEGAL ARGUMENT

### I.    STANDARD FOR SUMMARY JUDGMENT

Defendant ISPA is entited to the summary judgment and dismissal of the Plaintiff's negligence, strict products liability, and express and implied warranty causes of action.  As set forth in Rule 56(c) of Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial.  *See Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986).  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts material.  *Id.* at 323 (citation omitted).  In other words, the moving party is "entitled to a judgment as a matter of law because the non-moving party [cannot] make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  *Id.* at 323 (citation omitted).

A fact is material "if it might affect the outcome of the suit under the governing law."  *Holtz v. Rockefeller Co.*, 258 F.3d 62, 69 (2d. Cir. 2001).  An issue of fact is genuine only if a jury could reasonably find in favor of the nonmoving party based on the fact.  *Id.*  The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party to establish the existence of a factual question that must be

5

resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986). The nonmoving party may not rest "merely on allegations or denials" but must instead "set out specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). "[T]he nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536, F.3d 140, 145 (2d Cir. 2008).

Here, the Plaintiff does not have a valid negligence, strict products liability or express/implied warranty theory of liability against defendants herein, thus entitling ISPA to summary judgment and dismissal of all such causes of action.

## SUMMARY OF MATERIAL FACTS[1]

Plaintiff, during the course of his employment with IAWW, was injured when the finger of his left hand came into contact with the moving rollers of the Glue Spreader component of a 2011 Italpresse Mark/C 16-32/10 Automatic Pressing Line (Serial Number 176090311) manufactured by ISPA, Model Number R/4 160P, which was sold to IAWW by ISPA's subsidiary, Italpresse U.S.A., Inc. Exhibit 1, Alberto Sala's Deposition Transcript ("Sala Dep."), 27: 7-20; 58: 9-13.

### *The Pressing Line & Glue Spreader*

The Pressing Line came with two user manuals, one for the Pressing Line, and a separate manual that pertained only to the Glue Spreader. Exhibit 1, Sala Dep. 22:5-16. The Glue Spreader's manual included cleaning instructions for the Glue Spreader. Exhibit 1, Sala Dep., 22:5-15; 23:2-9; 107:15-18. The Glue Spreader has multiple warning placards that clearly

---

[1] ISPA respectfully directs the Court to and incorporates herein its previously submitted Rule 56.1 Statement of Undisputed Material Facts.

254572372v.1
254572372v.1

communicate and display the danger of the nip points on the moving rollers.  Exhibit 6, German Monterosa's Deposition Transcript ("Monterosa Dep."), 95:22-98:25; Exhibit 1, Sala Dep. at Exhibit 2; Exhibit 3, Irving Ojalvo's Deposition ("Ojalvo Dep."), at Exhibit 1, pp. 79-82.

*Incident of November 4, 2014*

Plaintiff received only two training sessions from his brother/co-worker, Alex Chica-Hernandez (hereinafter referred to as "Alex") on how to properly clean the Glue Spreader, before he attempted to clean the machine on his own, on the day of the accident.  Exhibit 7, Plaintiff's Deposition Transcript ("Pl.'s Dep."), 80: 10-14.  Plaintiff did not read or look at any of the warnings on the Glue Spreader.  Exhibit 7, Pl.'s Dep. 80:15-81:6. Just before the accident occurred, Plaintiff had lifted the blue mesh gate that was supposed to stop the rollers.  Exhibit 7, Pl.'s Dep., 65:19-23, 99:2-4, 99:24-25, 102:6-12, 103:16-19.  Notably, the Plaintiff does not mention that he opened the silver safety grate, as well, but it is presumed he did since both the blue mesh gate and the silver safety grate must be opened for the Plaintiff to have touched the moving rollers with his hand.  Exhibit 1, Sala Dep. 64:3-17, 80:24-81:4.  As it turns out, IAWW had intentionally bypassed all three of the interlock switches that stop the rollers inside the Glue Spreader machine from moving when the safety gates are lifted.  Exhibit 4, David Ortmayer's Deposition Transcript ("Ortmayer Dep."), 52:7-16.  One interlock switch, the one connected to the silver safety grate, had been completely removed.  Exhibit 3, Ojalvo Dep. at Exhibit 1, p. 98; Exhibit 1, Sala Dep. at Exhibit 1, p. 44.  A service technician also discovered that a jumper wire had been installed in the electric panel of the Pressing Line to bypass that switch.  Exhibit 4, Ortmayer Dep. 53:10-13.  The other two switches were disabled by wrapping tape around the activation cams to make sure that the switches stayed active even when the blue mesh gates were lifted.  Exhibit 4, Ortmayer Dep. 53:7-10.  All of this information was available to Dr. Ojalvo, but he failed to consider any of it and

7

was not aware of these specific details on the date of his deposition, or when he wrote his report, or supplemental report, despite the fact having access to Mr. Ortmayer's deposition transcript.

Even though Plaintiff could hear that the machine was on and see that the rollers were still moving, he proceeded to place his bare hand near the rollers and was injured. Exhibit 7, Pl.'s Dep. 50: 16-24, 65:19-23, 91:23-92:2, 99:2-4, 100:25-101:4, 103:16-19, 127:23-128:3, 134:13-18.

*Dr. Ojalvo's Flawed Opinions and Reports*

Dr. Ojalvo, has served three expert reports dated February 2020 ("First Report"), September 2020,[2] and August 2020 ("Third Report"). Exhibit 3, Ojalvo Dep. 73:15-22, Exhibits 2-3. Dr. Ojalvo's First Report incorrectly concluded that the user's manual for the Glue Spreader "did not apply suitable safe guidance" and that "the machine was defective because it did not provide appropriate guarding of the driven rollers." Exhibit 3, Ojalvo Dep. 83:8-14, Exhibit 3 at p. 25. Dr. Ojalvo issued this First Report without adequate knowledge of the facts of the case, since he did not recognize that the Glue Spreader was equipped with interlock switches by the manufacturer or that the interlocks had been deactivated at the time of the accident, and he also did not realize that the Glue Spreader had its own use and maintenance manual. Exhibit 3, Ojalvo Dep. 90:20-91:10, 198:16-19, Exhibit 2 at p. 7. Dr. Ojalvo was also provided with a wiring diagram in ISPA's discovery document production that makes reference to the location of the interlocks equipped on the subject Glue Spreader. Exhibit 11, Deposition of Peter Swalje, at Exhibit 1, p. 54. Dr. Ojalvo had access to all of this information months before issuing the First report. Exhibit 3, Ojalvo Dep. 99:14-100:6; Exhibit 1, Sala Dep. at Exhibit 5. After reading ISPA's experts' reports, Dr. Ojalvo abandoned his prior opinion written conclusion in the First

---

[2] Dr. Ojalvo's second report was retracted by plaintiff's counsel under a claim of privilege as a draft report.

254572372v.1
254572372v.1

Report that the Glue Spreader lacked adequate guarding.  Exhibit 3, Ojalvo Dep. at Exhibit 2, p. 7.

In his supplemental   report, Dr. Ojalvo changed his theory concluding that the Glue Spreader was unreasonably dangerous because the interlocks were "too easy" to defeat, and he claimed that a Schmersal brand interlock would have prevented the Plaintiff's accident.  Exhibit 3, Ojalvo Dep. 167:14-170:23, Exhibit 2 at p.7.  He proposed this theory without reviewing any documentation from Schmersal, the company that manufacturers these interlock switches.  Exhibit 3, Ojalvo Dep. 168:16-21, 169:2-19.  He prepared no circuit diagram or drawings for his proposed, no alternative interlock design, nor did he build an exemplar model.  Exhibit 3, Ojalvo Dep. 170:24-171:3, 179:11-13, 182:21-23.  He did not test his proposed, alternative interlock design.  Exhibit 3, Ojalvo Dep. 65:16-20.  He also admitted that a Schmersal brand type of interlock can be bypassed, although he did not know that it can also easily be bypassed by a $14 key that can be purchased online.  Exhibit 3, Ojalvo Dep. 172:22-173:6.

Dr. Ojalvo concluded that the warnings on the Glue Spreader were inadequate, yet he testified that the pictograms and font sizes of the warnings that were on the machine at the time of plaintiff's accident, which warned against placing a hand near the nip points, were adequate. Exhibit 3, Ojalvo Dep. 187:3-16.  Dr. Ojalvo's proposed, alternative warning had never been tested, published, or subjected to peer-review.   Exhibit 3, Ojalvo Dep. 65:16-20, 187:21-23, 187:17-20.   Nor could Ojalvo identify another manufacturer's glue spreader sold in the marketplace with his proposed warning.  Exhibit 3, Ojalvo Dep. 191:20-23.

Dr. Ojalvo also admitted that he did not know certain essential facts about the accident, including the length of the Plaintiff's left arm, the distance between the hook where the Plaintiff was placing the hose and where the Plaintiff was standing when he his hand was caught in the

rollers, and he does not know the actual nip point inside the Glue Spreader where the Plaintiff was injured.  Exhibit 3, Ojalvo Dep. 177:8-25.  Dr. Ojalvo did not test certain theories, or attempt to rule out other possible causes for plaintiff's accident by attempting to reconstruct the accident.  Exhibit 3, Ojalvo Dep. 50:17-23, 51:16-20, Exhibit 1 at p. 86.  Lastly, even though he claims the interlock switches equipped on the machine were defective in their design because they were too easily defeated, he admitted at deposition that he did not even know the specific method as to how the interlocks had been bypassed.  Exhibit 3, Ojalvo Dep. 106:4-13.

## II.    THE OPINIONS OF THE PLAINTIFF'S ENGINEER ARE UNRELIABLE, BASELESS, AND THEREFORE INADMISSABLE AND NOT ENTITLED TO CONSIDERATION.

In determining a summary judgment motion, the Court must first determine the admissibility of expert testimony.  *See Raskin v. Wyatt Company*, 125 F.3d 55, 66 (2d Cir. 1997).  *See also Tamarin v. Adam Caterers, Inc*., 13 F.3d 51, 53 (2d Cir. 1993); *Borgognone v. Trump Plaza*, No. 98-CV-6139 (ILG), 2000 U.S. Dist. LEXIS 4081, at *6 (E.D.N.Y. Mar. 9, 2000) ("On a summary judgment motion, 'a district court properly considers only evidence that would be admissible at trial.'") (quoting *Nora Beverages v. Perrier Group of America*, 164 F.3d 736, 746 (2d Cir. 1998)).  Federal Rule of Evidence 702 provides that a qualified expert may testify to scientific, technical or other specialized knowledge that will assist the trier of fact to understand the evidence.  If a proffer of expert testimony is excluded as inadmissible pursuant to Rule 702, the Court must make the summary judgment determination on a record that does not include that evidence.  *See Raskin*, 125 F.3d at 55 ("The principles governing admissibility of evidence do not change on a motion for summary judgment.  Rule 56(e) provides that affidavits in evidence and against summary judgment 'shall set forth such facts as would be *admissible in evidence*.'") (quoting Fed. R. Civ. P. 56(e)) (emphasis in original); *General Elec. Co. v. Joiner,* 522 U.S. 136, 143, 118 S. Ct. 512, 517 (1997) ("On a motion for summary judgment, disputed issues of fact are

10

resolved against the moving party … but the question of admissibility of the expert testimony is not such an issue of fact."); *Community of Roguefort v. William Faehndrich, Inc.*, 303 F.2d 494, 498 (2d Cir. 1962) ("[S]ince the object of [summary judgment] is to discover whether one side has no real support for its version of the facts, the Rule specifically states that affidavits shall 'set forth such facts as would be admissible in evidence.'").

The opinions of Dr. Ojalvo, the Plaintiff's engineer, are not admissible and should not be considered in deciding ISPA's motion for summary judgment. Dr. Ojalvo's conclusions that the Glue Spreader was defective in its design because the safety interlocks were "too easily" bypassed, that ISPA's warnings were inadequate, and that these supposed defects caused the Plaintiff's injuries are pure speculation and guesswork. As the gatekeeper charged with the task of deciding whether Dr. Ojalvo's testimony satisfies Rule 702's general requirements of reliability and relevance, the Court must consider whether "(1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597, 113 S.Ct. 2786 (1993). In analyzing the reliability of an expert's testimony, the "key question" is "whether [the expert's conclusions] can be (and [have] been) tested." *Daubert,* 509 U.S. at 593, 113 S. Ct. 2786 (alteration in original). Solid qualifications are not enough. *See Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991-92 (5th Cir. 1997) (excluding testimony of qualified expert who failed to conduct tests); *Clark v. Takata*, 192 F.3d 750, 758 (7th Cir. 1999) (excluding testimony of highly qualified expert who failed to conduct tests); *Colon v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 75 (S.D.N.Y. 2001) ("Guesswork, even educated hunches by qualified experts, is not enough. The evidence must be genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist.") (quoting *Cummins*

11

*v. Lyle Indus.*, 93 F.3d 362, 362 (7th Cir.1996)).  While conjecture by a qualified expert may merit careful attention, ***the courtroom is "not the place for scientific guesswork***, even of the inspired sort."  *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir.1996) (emphasis added).

Dr. Ojalvo's opinions in this case were not "based upon sufficient facts or data," nor were they the product of reliable principles and methods."  Dr. Ojalvo did not reconstruct the accident. Exhibit 3, Ojalvo Dep. 50:17-23,.  Dr. Ojalvo's opinions in this case were not published or subject to peer-review or based on peer reviewed research conducted by other engineers or experts. Exhibit 3, Ojalvo Dep. 187:17-20.  He also admitted that he did not know and did not attempt to find out certain facts indispensable to any analysis of the accident, including the length of Plaintiff's left arm, where Plaintiff's body was positioned at the time his hand was caught, the distance between the hook and where Plaintiff was standing when he was injured, or even trying to determine the actual nip point where Plaintiff was injured on the Glue Spreader.  Exhibit 3, Ojalvo Dep. 46:5-7, 50:17-23, 52:2-53:2, 145:8-12.  In addition, in an attempt to backfill the lack of evidence concerning how the Plaintiff's accident actually occurred, Dr. Ojalvo made unsupported assumptions that the Plaintiff was using a rag at the time of the accident, that the rag is what was first caught by a nip point inside the machine, and that the nip point eventually caught and grabbed the Plaintiff's hand, leading to his injuries.  Exhibit 3, Ojalvo Dep. 47:23-48:3.  In contrast, the Plaintiff's deposition testimony revealed that he does not know whether he had a rag in his left hand at the time of the accident, and that he does not even know how this accident specifically occurred.  Exhibit 7, Pl.'s Dep. 84:19, 127:14-22.  On Dr. Ojalvo's inspection notes in black pen is written that the Plaintiff used his right hand to stop the rollers, while the Plaintiff

testified that he used his knee to stop the rollers in the Glue Spreader at the time of the accident. Exhibit 3, Ojalvo's Dep. at Exhibit 1, p.18; Exhibit 1, Pl.'s Dep. 87:21-25.[3]

Neither his proposed alternative interlock design nor his proposed alternative warning were ever tested. Exhibit 3, Ojalvo Dep. 170:24-171:3, 179:11-13, 182:21-23, 187:17-23. Dr. Ojalvo's utter failure to test his opinions alone renders them unreliable and therefore inadmissible under Rule 702. *See Brooks v. Outboard Marine Corp.*, 234 F.3d 89, 92 (2d Cir. 2000) (rejecting proposed alternative design of kill switch, as "[t]he failure to test a theory of causation can justify a trial court's exclusion of the expert's testimony"); *Rypkema v. Time Manufacturing Company*, 263 F. Supp. 2d 687, 693 (S.D.N.Y. 2003) (excluding plaintiff's expert report as "a flat opinion lacking scientific or engineering basis" where plaintiff's expert did not reconstruct the accident, evaluate the feasibility of an alternative design, give any opinion concerning how the alternative design would have prevented the accident, or show the use of an alternative design in the marketplace); *compare Jarvis v. Ford Motor Co.*, No. 92 Civ. 2900, 1999 WL 461813, at *4 (S.D.N.Y. July 6, 1999) (admitting expert's testimony in design defect case where expert's theory of causation had been "sufficiently verified through repeated tests on a model that accurately reflects the relevant electrical components on the 1991 Ford Aerostar").

Dr. Ojalvo's opinion that the Glue Spreader was defective because of IAWW's ability to bypass the interlock components completely lacks any basis in fact or data. Dr. Ojalvo cannot possibly have established that the machine's interlocks were too easy to bypass, because he was not even aware that they had been bypassed when he first inspected the machine in person. Indeed, when he first inspected the Glue Spreader he completely missed the interlocks that were on the

---

[3] Whether or not the Plaintiff disputes these facts is irrelevant, because Dr. Ojalvo had no idea one way or the other and simply made assumptions to fill in the blanks.

254572372v.1
254572372v.1

machine, but bypassed,[4] altogether, initially opining that the machine had none. Exhibit 3, Ojalvo Dep. 83:3-14. Once Dr. Ojalvo figured out the machine had interlocks, he assumed that the interlocks were easily bypassed because two activation cams were wrapped with tape to actuate replacement interlocks, non-original parts, located inside the machine frame. In making this assumption, he completely ignored the testimony of a technician who discovered that the safety interlock switches for three safety grates have been disabled intentionally by IAWW, one with a jumper wire in the electric panel of the Pressing Line to completely de-energize the switch and another by completely removing the switch.[5] Exhibit 4, Ortmayer Dep. 53:3-23. Dr. Ojalvo admitted that he was not aware that any bypass was implemented with a jumper wire. Since Dr. Ojalvo was not even aware what mechanism was used to bypass the safety interlock guard switches on the Glue Spreader, he certainly cannot say that the safety interlock was "easily" bypassed.

He attempted to make up for this utter failure to address the Glue Spreader's interlocks by proposing a new theory that the glue spreader was defective because its interlocks were too easy to bypass. His proposal of a "Schmersal-type" interlock as an alternative is equally unfounded. Dr. Ojalvo could not even say with certainty whether the Glue Spreader *already* had Schmersal interlocks. Exhibit 3, Ojalvo Dep. 167:25-168:7. In reaching the conclusion that a Schmersal interlock would have prevented the Plaintiff's accident, he reviewed only one document, from a manufacturer other than Schmersal. Exhibit 3, Ojalvo Dep. 168:8-21. He later admitted that any interlock device is bypassable, and that the proposed Schmersal interlock in particular is

---

[4] Only one interlock would have been completely missing from the machine on the day of Dr. Ojalvo's inspection—which he conducted without any of defendants' experts present, before the Plaintiff filed suit. According to Mr. Ortmayer, at least two of the interlocks would have been covered in tape, which Dr. Ojalvo failed to recognize during his inspection of the machine and thereafter incorrectly opined the machine was defective because it did not come equipped with interlock switches.

[5] Whether or not the Plaintiff disputes these facts is irrelevant, because Dr. Ojalvo had no idea one way or the other and simply made assumptions to fill in the blanks.

14

susceptible to being bypassed with a key made for that purpose that anyone can purchase. Exhibit 3, Ojalvo Dep. 172:22-173:3, 207:21-209:2, 210:4-7. Confronted with some of these problems in his theory, Dr. Ojalvo then backpedaled his opinion at deposition, claiming, "I did not propose an interlock," and that the Schmersal was "just an example." Exhibit 3, Ojalvo Dep. 173:17-22.

Even more egregious is the fact Dr. Ojalvo he has never tested his incomplete theory about a proposed alternative to the interlocks that were already equipped on the Glue Spreader. He has never developed or constructed an interlock system or a presence-sensing device for any glue spreader machine, let alone for this specific type of Glue Spreader. Exhibit 3, Ojalvo Dep. 170:24-171:3. He has not set forth any analysis of the feasibility of adding a Schmersal interlock device to the Glue Spreader or of the impact the Schmersal interlocks would have on the utility of the original Glue Spreader design, including drawings or a circuit diagram. Exhibit 3, Ojalvo Dep. 179:11-13, 182:21-23. Dr. Ojalvo also did not know if any other model Glue Spreaders which were sold in the marketplace were equipped with a different interlock than was originally equipped on the subject Glue Spreader.

Dr. Ojalvo similarly cannot identify a single manufacturer's glue spreader on the market that has applied his proposed warnings. Exhibit 3, Ojalvo Dep. 180:19-22. As mentioned above, Dr. Ojalvo admitted that he has not tested his proposed warning for the Glue Spreader. Exhibit 3, Ojalvo Dep. 187:21-23. He also admitted that he could not be sure that his proposed warning would have made a difference. In fact, Dr. Ojalvo's proposed English-language warning could not have made a difference in preventing Plaintiff's accident in light of the Plaintiff's failure to look at the warnings on the machine, limited understanding of the English language, and pattern of disregarding warnings and instructions. Exhibit 3, Ojalvo Dep. 194:19-24; Exhibit 7, Pl.'s Dep. 7:24-8:3.

In light of these shortcomings, it is unsurprising that this Court has excluded Dr. Ojalvo's opinion testimony before, in *Sorto-Romero v. Delta Int'l Mach. Corp.*, No. 05-CV-5172 (SJF) (AKT), 2007 U.S. Dist. LEXIS 71588, at *1 (E.D.N.Y. Sep. 24, 2007), for failure to meet the reliability standard established in *Daubert*. *Sorto-Romero* involved a wood shaper. 2007 U.S. Dist. LEXIS 71588, at *1. The defendant moved for summary judgment, asserting that the testimony of plaintiff's expert witness, Dr. Ojalvo, was inadmissible. *Id.* at *9. Specifically, Dr. Ojalvo opined in his report that the subject wood shaper was defectively designed because it did not have an interlock to prevent machine operation without the guard in place and that the wood shaper lacked proper warnings in that the warnings were too small, and not prominently displayed. *Id.* at *13-17. This Court granted the defendant's motion for summary judgment as to the plaintiff's design defect claim, finding that Dr. Ojalvo's proposed testimony failed to meet the *Daubert* standard for reliability. *Id.* at *1.

The similarities between this case and *Sorto-Romero* are overwhelming. Dr. Ojalvo admitted that he was disqualified in *Sorto-Romero* in part because it was his first case involving a wood shaper. Exhibit 3, Ojalvo Dep. 217:10-20. The instant case happens to be his first case involving a glue spreader. Exhibit 3, Ojalvo Dep. 222:22-223:2. In *Sorto-Romero*, as here, Dr. Ojalvo did not develop or test his proposed prototypes or alternatives or create models or drawings. Exhibit 3, Ojalvo Dep. 170:24-171:3, 179:11-13, 182:21-23. This Court also determined that Dr. Ojalvo had not written or published peer-reviewed articles describing the theories he advanced in the case and that his proposed alternative design had not been reviewed by colleagues in the engineering community. The theories he sets forth in the instant case are subject to these very same weaknesses upon which the Court relied in *Sorto-Romero*. Exhibit 3, Ojalvo Dep. 187:17-23. Ultimately, this Court found that "[i]n order to establish that an alternative design would have

16

permitted Plaintiff to avoid injury, he must present an opinion from a person with specific technical and scientific knowledge beyond the ken of an average person.  Without such evidence, the jury cannot fairly decide the issue.  Dr. Ojalvo's testimony is not admissible as 'expert testimony' and therefore, this claim fails as a matter of law and Defendant is entitled to summary judgment." *Sorto-Romero*, 2007 U.S. Dist. LEXIS 71588, at *27.  The instant case calls for the same result.

Furthermore, this Court is not the only one to have excluded Dr. Ojalvo's expert opinions as unreliable.  *See, e.g.*, *Davidov v. Louisville Ladder Grp., LLC*, 2005 U.S. Dist. LEXIS 3117, at *4 (S.D.N.Y. Mar. 1, 2005); *Lumpkin v. Morris*, CV 95 0547508, 1996 Conn. Super. LEXIS 3350, at *3 (Super. Ct. Dec. 20, 1996); *Martinez v. Greenwich St. Prods., Inc.*, 2010 NY Slip Op 33477(U), ¶ 8 (Sup. Ct.).  The Court may consider outside judicial determinations in deciding whether an expert's proposed testimony is sufficiently reliable to permit it under Rule 702.  *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 141 F. Supp. 2d 320, 325 (E.D.N.Y. 2001) ("After a witness has been repeatedly rejected by courts . . . it is appropriate to take judicial notice of lack of credibility to reject a witness on *Daubert* grounds.").

Dr. Ojalvo's failure to abide by the Code of Ethics for Engineers of the National Society of Professional Engineers, which requires engineers to "issue public statements only in an objective and truthful manner" and to include "all relevant and pertinent information in such reports, statements, and testimony, which should bear the date indicating when it was current," is further disqualifying.  Exhibit 3, Ojalvo Dep. at Exhibit 7.  Dr. Ojalvo committed multiple violations of the Codes of Ethics in his work on this case.  None of his expert reports bear a date, and he was not aware that Code of Ethics specifically required a signed report to be dated.  Exhibit 3, Ojalvo Dep. 78:5-9, Exhibits 2, 3.  Before he issued his First Report, he admitted that he reviewed only the Plaintiff's deposition transcript and did not review the exhibits.  Exhibit 3,

Ojalvo Dep. 76:11-23.  He did not review any of the deposition transcripts of any other fact witnesses, all of which were available to Plaintiff for at least seven months before he issued his First Report.  Exhibit 3, Ojalvo Dep. 74:25-75:13.  He admitted that this failure was problematic, stating "[w]hat good is it if I don't see their depositions?"  Exhibit 3, Ojalvo Dep. 75:14-15.  In fact, he admitted that his First Report was "incomplete," and he issued the First Report without adequate knowledge of the facts of the case.  Exhibit 3, Ojalvo Dep. 198:16-23.  Significantly, he utterly failed to address the negligence of the Plaintiff's employer in his reports even though the Plaintiff complained that he did not receive complete training from his employer.  Exhibit 1, Pl.'s Dep. 97:24-25, 98:2-4.

For the reasons set forth above, the Plaintiff cannot demonstrate that Dr. Ojalvo's testimony is based upon scientific facts or data; that his opinions are "the product of reliable principles and methods"; or that he "has applied the principles and methods reliably to the facts of the case."  Fed. R. Evid. 702.  Dr. Ojalvo's testimony should therefore be excluded herein as unreliable under Rule 702.

### III.    ISPA IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF CANNOT PROVE A *PRIMA FACIE* CASE OF STRICT PRODUCT LIABILITY.

The Plaintiff cannot prove a *prima facie* case of strict products liability.  Strict product liability in New York requires a showing that a defective product caused the plaintiff's injury.  *See McCarthy v. Olin Corp.*, 119 F.3d 148, 154 (2d Cir. 1997).  Here, the Plaintiff does not have a valid strict products liability cause of action predicated upon a manufacturing defect, design defect, and/or failure to warn theory of liability, as the Plaintiff has not proffered a feasible, safer alternative design; the Plaintiff was fully aware of the risk of injury when placing his hand inside the subject Glue Spreader in the area of its moving rollers and did not read the warnings that were present on the Glue Spreader or in its manual, which warned against a person placing their hands inside the

Glue Spreader; and there has been no evidence of a manufacturing defect that purportedly caused the Plaintiff's injuries.

### A. The Plaintiff Has Not Met His Burden of Demonstrating a Feasible Alternative Design, Which Eviscerates His Design Defect Cause of Action.

The Plaintiff has not established that it was feasible to design the subject Glue Spreader in a safer manner, thus mandating dismissal of his defective design theory of liability.  To succeed on his defective design claim, the Plaintiff must make a showing that (1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing plaintiff's injury.  *See Voss v. Black & Decker Mfgr. Co.*, 59 N.Y.2d 102, 108, 463 N.Y.S.2d 398, 402 (1983); *Codling v. Paglia*, 32 N.Y.2d 330, 342, 345 N.Y.S.2d 461, 469 (1973); *Ramirez v. Sears, Roebuck & Co*., 286 A.D.2d 428, 429, 729 N.Y.S.2d 503, 505-6 (2d Dept. 2001); *Sabater v. Lead Indus. Assoc., Inc.*, 183 Misc. 2d 759, 764 704 N.Y.S.2d 800, 804 (N.Y. Sup. Ct. Bronx Co. 2000).[6]  A proposed alternative design must also be "economically and technically" feasible.  *See Ruthosky v. John Deere Co.*, 235 A.D.2d 620, 622, 651 N.Y.S.2d 717, 719 (3d Dept. 1997) (stating that alternative designs must be "economically and technically feasible" when manufactured); *Voss*, 59 N.Y.2d 102 at 108, 463 N.Y.S.2d at 402 ("the plaintiff, of course, is under an obligation to present evidence that ... it was feasible to design the product in a safer manner"); *Anderson v. Hedstrom Corp.*, 76 F. Supp. 2d 422, 454 (S.D.N.Y. 1999) (citing *Cover v. Cohen*, 61 N.Y.2d 261, 266-67, 473 N.Y.S.2d 378, 380 (1984)) ("available alternatives" must exist such that a reasonable person, balancing the product's risks, cost and utility against the alternative's risk, cost and utility, would conclude that it should

---

[6] Courts in this jurisdiction have noted that, for the purposes of analyzing a design defect claim, the theories of strict liability and negligence are virtually identical.  *See, e.g.*, *Searle v. Suburban Propane Div. Of Quantum Chem. Corp*., 263 A.D.2d 335, 338, 700 N.Y.S.2d 588, 591 (3d Dept. 2000) ("[I]n a design defect case, there is almost no difference between a prima facie case in negligence and one in strict liability.") (internal quotations and citations omitted).

not have been marketed).  An alternative design is feasible if the "Plaintiff's expert can show, through testing and construction of a prototype, that such an alternative design is within the realm of practical engineering feasibility, thereby demonstrating the utility, cost, safety, sanitation and other characteristics of the proposed alternative" and/or if the "Plaintiff's expert can identify makers of similar equipment who have already put into use the alternative design that has been proposed." *Rypkema*, 263 F. Supp. 2d 687, 692 (S.D.N.Y. 2003).

ISPA respectfully submits that Dr. Ojalvo has not offered *any* alternative design.  Dr. Ojalvo testified, "I did not propose a specific design that would have been acceptable" and that he had only enough information "to make the statement that it was possible."  Exhibit 3, Ojalvo Dep. 175:9-12; *see also* Exhibit 3, Ojalov Dep. 174:13-15 ("Q: And how do you know that the design that you proposed is in fact reasonable?  A: I didn't propose one.  I'm just saying that you had enough equipment to design something that would be."), 179:20-21 ("Well I don't have a specific design.  I have a concept.").  In his Third Report,[7] Dr. Ojalvo concluded that the Glue Spreader was unreasonably dangerous because the interlocks were too easy to defeat and that a Schmersal brand type of interlock would have prevented the Plaintiff's accident.  Exhibit 3, Ojalvo's Dep. 167:14-170:23, Exhibit 2 at p.7.  He admitted that a Schmersal brand type of interlock can also be bypassed, although he did not know just how easily it could be bypassed—with a $14 key that can

---

[7] Dr. Ojalvo's First Report incorrectly concluded that the user's manual for the Glue Spreader "did not apply suitable safe guidance" and that "the machine was defective because it did not provide appropriate guarding of the driven rollers."  Exhibit 3, Ojalvo Dep. 83:8-14, Exhibit 3, p. 25.  Dr. Ojalvo issued this First Report without adequate knowledge of the facts of the case, as he did not know that the Glue Spreader had interlocks, that the interlocks had been deactivated at the time of the accident, or that the Glue Spreader had its own use and maintenance manual. Exhibit 3, Ojalvo Dep. 90:2-91:10, 198:16-19, Exhibit 2 at p.7.  Dr. Ojalvo's ignorance of these crucial components is puzzling given that he had access to this information months before issuing the First report.  Exhibit 3, Ojalvo Dep. 99:14-100:6; Exhibit, Sala Dep. at Exhibit 5.  Upon reading ISPA's expert's report, Dr. Ojalvo abandoned his prior opinion written in the First Report that the Glue Spreader lacked adequate guarding.  Exhibit 3, Ojalvo Dep. at Exhibit 2, p. 7.

be purchased online.  Exhibit 3, Ojalvo Dep. 170:21-171:3,174:4-175:12, 179:11-180:8, 182:21-23.  Clearly, an interlock that can be bypassed more easily than the interlock he claims was too easily bypassed is not a feasible, safer alternative.  This purported alternative design is nothing more than an unscientific attempt to bolster the Plaintiff's case.  Ultimately, Dr. Ojalvo testified that there are many different types of interlocks that could have been used in the Glue Spreader, thus undermining his entire "alternative design" theory.  Exhibit 3, Ojalvo's Dep., 171:12-17.

Even if he had not completely undermined his own Schmersal interlock theory, he has offered absolutely no indication that this "design" is "within the realm of practical engineering feasibility" with respect to its "utility, cost, safety, sanitation and other characteristics," nor has he identified any "makers of similar equipment who have already put into use the alternative design that has been proposed." *Rypkema*, 263 F. Supp. 2d at 692.  He proposed this so-called alternative design without reviewing any documentation from Schmersal.  Exhibit 3, Ojalvo Dep. 168:16-21, 169:2-19.  He prepared no circuit diagram or drawings for his proposed, alternative interlock design, nor did he build an exemplar model or perform any failure modes and effects analysis.  Exhibit 3, Ojalvo Dep. 170:24-171:3, 179:11-16, 182:21-23.  He did not test his proposed, alternative interlock design, though it is unclear how he could have tested a vague theory with no concrete engineering elements.  Exhibit 3, Ojalvo Dep. 170:24-171:3.  He simply did not think it was necessary to run a test in this case to offer his opinion.  Exhibit 3, Ojalvo Dep. 65:16-20.  He further admitted that he did not research which model interlock would have been best suited for the subject machine.  Exhibit 3, Ojalvo Dep. 171:18-20.  Dr. Ojalvo was not aware of any other glue spreader machine that incorporated an interlock with the features he proposed, or even one with a Schmersal interlock.  Exhibit 3, Ojalvo Dep. 180:19-22.

The Plaintiff's failure to demonstrate that it was feasible to design the Glue Spreader in a safer manner mandates dismissal of his cause of action predicated upon alleged design defect. *See Liz v. William Zinsser & Co.*, 253 A.D.2d 413, 414, 676 N.Y.S.2d 619, 620 (2nd Dept. 1998) (holding that "the Court erred in not dismissing those causes of action predicated on a design defect theory, as the plaintiffs failed to demonstrate that it was feasible to design the product in a safer manner"); *Toole v. Toshin Co., Ltd.*, No. 00-CV-881 S, 2004 U.S. Dist. LEXIS 30061, at *11 (W.D.N.Y. 2004) ("Where a plaintiff's expert proposes testimony concerning alternative designs that are never put into application by the expert or any identified competitive manufacturer, the trial court is justified in excluding that expert's testimony."). The *Sorto-Romero* case, once again, is illustrative. In that case, this Court, as discussed above, struck Dr. Ojalvo's expert report and precluded his testimony regarding his opinion that a wood shaper was defectively designed because it did not have an interlocking guard covering the cutting surface. *Sorto-Romero*, 2007 U.S. Dist. LEXIS 71588, at *13. Dr. Ojalvo had conceded at his deposition that he never owned or used a wood shaper similar to the one involved, that the case was his first analysis of a wood shaper, and that he had never developed nor constructed an interlock system for a wood shaper *Id.* at *14-15. As in the instant case, Dr. Ojalvo "did not develop or test prototypes of alternatives that he recommends, nor did he create models or drawings, leading to the conclusion that his opinion is based on speculation." *Id.* at * 19. In granting the defendant's motion to preclude Dr. Ojalvo's testimony, this Court found that Dr. Ojalvo "established neither the feasibility of his [interlock] hypothesis nor what impact it would have on the utility of the original design" and that "his conclusions appear[ed] to be unsupported by the rigorous examination associated with generally accepted protocols, calling into question the reliability of his conclusions." *Id.* at * 20-21. This Court also noted that Dr. Ojalvo had not "written or published any articles describing the

theories he advances in this case and his proposed alternative design has not been reviewed by colleagues in the engineering community. *Id.* at 22-23. As discussed above, nor has he done so here.

**B. Plaintiff's Failure to Warn Cause of Action Fails Because He Was Aware of the Open and Obvious Risk of Injury and Plaintiff Has Produced No Evidence that the Proposed Alternative Warning Would Have Prevented the Plaintiff's Accident.**

*i. Plaintiff Was Fully Aware of the Open and Obvious Risks Associated with the Moving Rollers of the Subject Glue Spreader When He Inserted His Hand into the Machine.*

Since the danger of the nip points of the moving rollers of the Glue Spreader was an open and obvious risk that the Plaintiff was fully aware of, ISPA cannot be held liable upon a failure to warn theory of strict products liability as a matter of law. *See Pirie v. Krasinski*, 18 A.D.3d 848 (2005); *Maria v. Church of Our Lady of Mount Carmel*, 36 A.D.3d 766, 767 (2d Dep't. 2007); *Galssberg v. Staples the Office Superstore E., Inc.* No. 08-cv-2132, 2010 U.S. Dist. LEXIS 103096 at *3 (E.D.N.Y. Sept. 13, 2010). A condition is open and obvious if it "could have been or should have been appreciated by the user or [if it] can be recognized as a matter of common sense." *Stephen v. Sico Inc.,* 237 A.D.2d 709, 711, 654 N.Y.S.2d 449, 451 (3d Dep't. 1997). The touchstone for holding a condition to have been open and obvious is whether "it was readily observable through the use of one's senses." *Saltz v. Wal-Mart Stores, Inc.*, 10-civ-4687, 2012 U.S. Dist. LEXIS 33448 at *7 (S.D.N.Y. Mar. 7, 2012); *see also Brown v. Metro. Transit Auth.*, 281 A.D.2d 159, 161, 721 N.Y.S.2d 56, 58 (1st Dept. 2001) (defendants had no duty to warn of a danger "that [could have been] easily recognized or discovered by the normal use of one's senses."). Significantly, a plaintiff's actual observation of an open and obvious condition is immaterial; the crucial inquiry is if the plaintiff *could* have seen it. *See Glassberg,* 2010 U.S.Dist. LEXIS 103096 at *5 ("[U]nder New York law, whether a plaintiff observed a condition prior to tripping over it is immaterial to the question of whether the condition was open and obvious.");

23

*Matteo v. Kohl's Dep't Stores, Inc.,* no. 09-civ-7830, 2012 U.S. Dist. LEXIS 32193, at *8 (S.D.N.Y. March 5, 2021) ("[A] plaintiff's failure to see hazard does not necessarily preclude entry of summary judgment in favor of a landowner.").

The Plaintiff was fully aware of the risk posed by placing his hand inside the machine in the area of its moving rollers. Exhibit 7, Pl.'s Dep. 61:7-14. He testified at his deposition that his brother/co worker Alex told him not to place his hand inside machine, and he admitted at his deposition that he was aware of the risk of injury. Exhibit 7, Pl.'s Dep. *Id.* 61:7-14, 147:7-16. Before the date of the accident, the Plaintiff admitted that he recognized the danger of rollers on the Glue Spreader and knew not to put his hand near the rollers that were moving; was instructed to be careful when cleaning the Subject Glue Spreader by his brother; was shown how to lower the blue mesh gate before he cleaned the Subject Glue Spreader by his brother; understood that pressing the blue bar stops the Glue Spreader; was instructed to use a brush to clean the Subject Glue Spreader when cleaning the Subject Glue Spreader by his brother; was told that the Glue Spreader must be turned off before he cleans it with his hands by his brother; and was shown the automatic cleaning function of the Glue Spreader. Exhibit 7, Pl.'s Dep. 45:21-21, 61:7-14, 147:7-16; Exhibit 8, Alex's Dep. 23:3-16, 25:6-11, 53:20-25.

In addition, the deposition testimony of the Plaintiff's co-workers at IAWW establish that the risk of injury that can occur when placing a hand inside the Glue Spreader machine is an obvious risk, and by no means a hidden danger. In fact, Michael Lurz, a manager at IAWW, testified that the Glue Spreader was not a quiet machine, so a person could hear the noise if the rollers were moving. Exhibit 5, Michael Lurz's Deposition Transcript ("Lurz Dep."), 31:6-16. At the time of the accident, the Plaintiff was not wearing any ear protection. Exhibit 7, Pl.'s Dep. 87:2-4. The Plaintiff could see that the rollers in the Glue Spreader were moving at the time when

his hand got caught in the rollers. Exhibit 1, Pl.'s Dep. 80:15-81:6. The Plaintiff's own engineer admitted that the Plaintiff placed his hand in the danger zone of the machine and he would not have done what the Plaintiff did. Exhibit 3, Ojalvo Dep. 146:22-147:11. There is no legitimate argument that the danger of cleaning the subject Glue Spreader with one's bare hands while its rollers are moving is anything other than open and obvious.

Because the danger was open and obvious and well known to the Plaintiff before the accident, the Plaintiff may not recover upon a failure to warn theory of strict products liability. *See Baptise v. Northfield Foundry & Machine Company,* 184 A.D.2d 841, 842, 584 N.Y.S.2d 221 (3d Dept. 1992), (a duty to warn is *not* triggered when the injured party is "already aware of the specific hazard" or the hazard is "readily discernable from observation" and the "the absence of any warning could not have proximately caused plaintiff's injuries."); *Barnes v. Pine Tree Machinery*, 261 A.D.2d 295, 295, 691 N.Y.S.2d 398, 399 (1st Dept. 1999) (summary judgment in favor of the defendant affirmed, on the basis that "it [was] undisputed that, at the time of the injury, the safety guards installed by (defendant) before it shipped the machine had been removed" and "plaintiff's deposition testimony established that he was aware of the danger of using the machine without the safety guards and, indeed, that the danger was obvious").

### ii.     *There Is No Evidence That the Plaintiff's Proposed Warnings Were Feasible or Would Have Prevented the Plaintiff's Accident.*

Plaintiff has not met his burden of demonstrating the existence of feasible, safer alternative warnings. In his attempt to meet this burden, Plaintiff relies on Dr. Ojalvo's untested, baseless opinions. The reliability requirements discussed above apply equally to alternative warnings. *Bourelle v. Crown Equip. Corp.*, 220 F.3d 532, 538 (7th Cir. 2000). Dr. Ojalvo's proposed alternative warnings are not safer or feasible. Indeed, they cannot even accurately be described as alternatives—some of the warnings Dr. Ojalvo proposed as "alternatives" were already in place

on the Glue Spreader at the time of the accident.  He conceded that the pictographs already on the machine adequately displayed the potential hazard presented by the moving rollers.  Exhibit 3, Ojalvo Dep. 186:4-187:16.  He also conceded that the font sizes of the warnings were sufficient. Exhibit 3, Ojalvo Dep., 187:19-13.

Dr. Ojalvo's so-called "more explicit" warnings, as discussed above, are no more than off-the-cuff challenges to the Glue Spreader's current warnings without any substantial support.  *See Bourelle*, 220 F.3d at 539 ("[E]xperts' work is admissible only to the extent it is reasoned, uses the methods of the discipline, and is founded on data.  Talking off the cuff—deploying neither data nor analysis—is not acceptable methodology.").  Dr. Ojalvo conceded that he has not tested his proposed warnings, that he has not researched peer-reviewed publications to show these warnings would be effective, and that he did not know and had not so much as thought about which signal words would be used in these warnings.  Exhibit 3, Ojalvo Dep. 185:14-20, 187:17-23.  Dr. Ojalvo could not identify any glue spreader on the market that had applied his proposed English language warnings.  Exhibit 3, Ojalvo Dep. 191:20-23.

Dr. Ojalvo similarly offers no rationale to support his opinion that the Glue Spreader should have included Spanish-language warnings.  He could point to no industry standard or independent study calling for such warnings on a glue spreader to be written in multiple languages.  Moreover, the Plaintiff testified that he read little English and that he did not look at, or read the warnings on the Glue Spreader, so it is unclear how these "additional" warnings would have prevented his injuries.  Exhibit 7, Pl.'s Dep. 7:24-8:3.  55:23-25; 56:2-7, 76:10-13, 77:4-13, 78:2-4.  Since Dr. Ojalvo admitted that the Glue Spreader contained sufficient warnings and proposed no scientific basis for his claim that his proposed alternative warnings were safer or feasible, Plaintiff's inadequate warning theory of liability must fail.

### C. Plaintiff Has Conceded that the Glue Spreader Was Not Defectively Manufactured.

To plead and prove a manufacturing defect under either a negligence or strict liability theory, the plaintiff must show that a specific product unit was defective as a result of some mishap in the manufacturing process itself, improper workmanship, or because defective material was used in construction, and that the defect was the cause of plaintiff's injury. *Caprara v. Chrysler Corp.*, 52 N.Y.2d 114, 129, 436 N.Y.S.2d 251 (1981). A manufacturing flaw exists when the unit in question deviates in quality and other performance standards from all the other identical units. *Perazone v. Sears, Roebuck & Co.*, 128 A.D.2d 15, 17, 515 N.Y.S.2d 908, 911 (3d Dep't. 1987).

Plaintiff once again relies on Dr. Ojalvo to meet his burden, and Dr. Ojalvo's opinions once again fall short. Dr. Ojalvo ultimately conceded that the subject Glue Spreader did not have a manufacturing defect. In his First Report, he concluded "to a reasonable degree of engineering certainty, the machine was defective because it did not provide appropriate guarding of the driven rollers." Exhibit 3, Ojalvo Dep. at Exhibit 3, p. 25. Then, presumably after reading ISPA's experts' reports, he realized that the Glue Spreader in fact came with multiple safety devices, including the interlocked silver metal grate that completely blocks access to the rollers, and he admitted that his conclusion in the First Report that the Glue Spreader was defective was "incorrect." Exhibit 3, Ojalvo Dep. 83:3-7, 90:20-91:10, 96:4-10, 198:20-23. His final Third Report makes no mention of any manufacturing defect. *See* Exhibit 3, Ojalvo Dep. at Exhibit 3, p. 25. Nor did he identify any manufacturing defect at his deposition. As such, the Plaintiff's products liability cause of action based on the theory of manufacturing defect must also be dismissed.

## IV. <u>PLAINTIFF'S CLAIMS FOR BREACH OF WARRANTY ARE TIME-BARRED</u>.

Finally, the Plaintiff's claims for breach of warranty are time-barred by the statute of limitations. Exhibit 9, Complaint, Exhibit 10, Amended Complaint, Exhibit 12, Plaintiff's Responses to IUSA's Interrogatories. ISPA asserted an affirmative defense to the Plaintiff's breach of warranty claims on statute of limitations grounds in its Answer to the Amended Complaint. Exhibit 10, Defendant's Answer to Verified Amended Complaint ("ISPA's Answer"), Fifteenth Affirmative Defense.

Consideration of the statute of limitations cannot be said to be futile, as ISPA will succeed on this defense. A cause of action against a manufacturer or distributor for breach of warranty accrues on the date the party charged tenders delivery of the product, not on the date that some third-party sells it to the plaintiff. *See Heller v. U.S. Suzuki Motor Corp.*, 64 N.Y.2d 407, 410, 488 N.Y.S.2d 132, 133 (1985) (citing McKinney's Uniform Commercial Code §§ 2-318, 2-725); *Kern v. Frye Copy Systems, Inc.*, 878 F. Supp. 660, 665 (S.D.N.Y. 1995) (holding that plaintiff's breach of warranty claim for injuries sustained while using a rotary coater machine was barred under New York's statute of limitations, as it was not brought within four years of the date of delivery of the machine). ISPA sold the Pressing Line, with the Subject Glue Spreader, to Italpresse U.S.A., who in turn sold the same to the Plaintiff's employer in May of 2011. Exhibit 1, Sala Dep., 27:15-20; 28:2-5, 11-22; Exhibit 4, Ortmayer Dep. 10:12-24. The Plaintiff commenced the action by filing the summons and complaint on November 3, 2017, approximately 6.5 years after the Subject Glue Spreader was delivered to the Plaintiff's employer. Exhibit 10, Am. Compl. The Amended Complaint includes the serial number of the Glue Spreader that was delivered in 2011. *See, e.g.*, Exhibit 10, Am. Compl. ¶¶ 64-68. Accordingly, the Plaintiff's breach of warranty claims are time-

barred by the statute of limitations, mandating dismissal of those causes of action as a matter of law.

## CONCLUSION

For the foregoing reasons, ISPA respectfully request that the Court grant its motion for summary judgment to dismiss the Plaintiff's complaint against ISPA in its entirety, and for such other and further relief as the Court may deem just and proper.

Dated: White Plains, New York
        May 24, 2021

                              Respectfully Submitted,

                        **WILSON ELSER MOSKOWITZ**
                        **EDELMAN & DICKER LLP**

                        By: _____
                              Thomas M. DeMicco
                              Sun Ah (Michelle) Park
                              Marielle A. Moore
                              *Attorneys for Defendant*
                              ITALPRESSE S.P.A.
                              1133 Westchester Avenue
                              White Plains, New York 10604
                              (914) 323-7000
                              File No.:  10905.00065

To:    Jay Massaro, Esq.
       *Attorney for Plaintiff*
       DELL & DEAN, PLLC
       1225 Franklin Avenue, Suite 450
       Garden City, NY 11530
       (516) 880-9700
       JMassaro@d2triallaw.com

       Jeffrey K. Van Etten, Esq.

29

Perry Van Etten Rozanski & Primavera LLP
60 Broad Street, Ste 3600A
New York, NY 10004
212-406-9710
jkvanetten@pvrklaw.com

254572372v.1
254572372v.1